23 C.C.P.A.(Patents)

**MOSS et al. v. ELLIS.**

**Patent Appeal No. 3666.**

Court of Customs and Patent Appeals.
June 17, 1936.

I. Seltzer and C. W. Levinson, both of New York City, for appellants.

Sol. Shappirio, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

We are here called upon to review a decision of the Board of Appeals of the United States Patent Office in an interference proceeding; eight counts being involved. Four of the counts are for the method described and four for the article produced.

Counts 1 and 5 are illustrative:

"1. In the method of forming laminated glass having a layer of a material containing an organic derivative of cellulose between sheets of glass, the step of applying an adhesive coating composition containing a urea-phenol-aldehyde resin that is compatible with said derivative of cellulose."

"5. Laminated glass having at lease one layer of a plastic sheet containing an organic derivative of cellulose interposed between sheets of glass and having a film of a urea-phenol-aldehyde resin to cause adhesion between the plastic sheet and the glass."

The counts originated as claims in a patent, No. 1,870,018, granted to appellants, Moss and Crutchfield, August 2, 1932, upon an application filed November 2, 1928, entitled "Laminated Glass and Method of Making the Same." At the time of the issuance of said patent, appellee, Ellis, had pending in the Patent Office an application, serial No. 185,660, filed April 21, 1927, entitled, "Laminated Vitriform Sheets and Process of Making Same," into which he copied the claims that became the counts. The interference was declared November 25, 1932. As declared it included eleven counts, but as to three of these the interference was dissolved and no appeal was taken by Ellis from the order of dissolution.

The date of conception alleged by Moss and Crutchfield in their preliminary statement was subsequent to the filing date of the Ellis application. Moss and Crutchfield were accordingly served with notice to show cause why judgment upon the record should not be entered against them. In response they moved to dissolve the interference on the ground that Ellis failed to disclose the subject matter of the counts in his application as originally filed. The Examiner of Interferences overruled the motion as to the counts here involved and awarded priority to Ellis, the senior party. His decision being affirmed by the Board of Appeals, the instant appeal to this court followed.

An analysis of the counts shows the following elements: (1) Panes or sheets of glass between which is interposed (2) a layer of material containing an organic derivative of cellulose which is caused to adhere to the panes of glass by (3) an adhesive coating composition containing a urea-phenol-aldehyde resin.

It may be added that counts 2, 4, 6, and 8 specify cellulose acetate as the organic cellulose derivative, and claims 1 and 2 require a urea-phenol-aldehyde resin that is "compatible" with the cellulose derivative.

Before us there is presented on behalf of appellants a twofold argument as to all the counts: First, it is urged that there is nothing in the Ellis application, as originally filed, to support the feature of an interposed layer containing an organic derivative of cellulose, and, second, nothing to support the feature of a bonding composition in which is contained a urea-phenol-aldehyde resin.

It is said in the beginning of the Ellis specification: "This invention relates to laminated glass, composed of sheets of glass joined by plastic material containing urea formaldehyde resin or related substance."

Assuming that the phrase "containing urea formaldehyde resin *or related substance*" is not sufficient to cover urea-*phenol*-aldehyde resin, we proceed to consider the first contention made on behalf of appellants as above stated. (Italics ours.)

The specification of Ellis describes a method of preparing urea formaldehyde resin and then, after reciting the necessity of having a bonding agent resistant to change of color likely to result from exposure to sun and heat for use in joining the panes of glass, asserts that "the urea formaldehyde resin is notably resistant, * * *" particularly when "made with organic acid reactants * * * such acids as phthalic acid * * * and the like."

From this particular part of the specification it would seem that Ellis may have been describing an agent for use in bonding the panes of glass without any layer of material, such as element 2 (above named) of the counts. At any rate, it says nothing of an organic cellulose derivative, but describes advantages of acidifying the resin in the manner described. However, immediately following this, the specification says: "[The] Same observations hold true when between the sheets of glass there is interposed a sheet of celluloid or nitrocellulose composition, cellulose acetate, cellulose ether, and the like. Bodies such as nitrocellulose are rather readily affected by alkalies and to some extent by a high content of organic acid. Preferably, therefore, the urea resin used to join the sheet of nitrocellulose to the two sheets of glass is only faintly on the acid side."

It is clear that the foregoing is definite in teaching the use, if desired, in bonding panes of glass, of "cellulose acetate," the layer material specifically named in counts 2, 4, 6, and 8, and to us it seems sufficient, as it did to the tribunals of the Patent Office, to cover the element or layer described broadly in the other counts as "an organic derivative of cellulose."

The second point urged on behalf of appellants is that the Ellis application makes no disclosure of the feature of "a urea-phenol-aldehyde resin." It seems to

have been agreed by both tribunals of the Patent Office that the term is not used in the said application; the Board saying: "The term 'urea-phenol-aldehyde resin' does not directly occur in the Ellis application."

It appears, however, that there was co-pending with this application another application of Ellis, being serial No. 735,600, entitled, "Urea Product and Process of Making Same," which teaches the use of urea-phenol-formaldehyde resins for cementing mica flakes to produce composite sheets, and in the specification of the instant application of Ellis it is said: "In connection with the employment of urea resin for the cementing of mica flake to produce composite sheets, reference is made to my copending application Serial No. 735,600. The various formulæ and procedures set forth therein with respect to mica may be applied herein, especially in conjunction with plasticizing agents as aforesaid."

The foregoing statement was regarded by both the Examiner of Interferences and the Board of Appeals as being a disclosure of the use of urea-phenol-aldehyde resin in the production of laminated glass, and they so held.

This holding is quite earnestly challenged on behalf of appellants and vigorous argument is presented, both orally and by brief, to the effect that application, serial No. 735,600, of Ellis, is confined wholly to the making of mica sheets. It is said in the brief: " * * * Only in one place in this application [serial No. 735,600] * * * is urea-phenol-formaldehyde resin mentioned, and in this place it is said that this resin is not recommended. * * *"

The matter so alluded to is stated in the specification as follows: "The invention however contemplates the use of urea resin whether made in acid, alkaline or neutral solution. It also may include urea phenol formaldehyde resin prepared for example by reacting on urea and phenol with formaldehyde in the presence of phthalic acid or other catalyst. For adherence to mica however the use of phenol is not recommended, at least in any influential amount since it tends to diminish the cementing power."

We are unable to concur in the soundness of the arguments made on behalf of appellants upon this point.

It is true that the last sentence of the statement above quoted discourages the use of urea-phenol-formaldehyde resin in the making of *mica sheets,* but its use is clearly taught even for those, and, when this is coupled with the teaching of the specification relative to the use of such agent in bonding *panes of glass,* when a sheet of nitrocellulose is also used, it seems to us that the Ellis disclosure is entirely sufficient to support this feature of the counts.

The only remaining point pressed on behalf of appellants relates to the limitation contained in counts 1 and 2, which requires, as expressed in count 1, "a urea-phenol-aldehyde resin that is *compatible* with said derivative of cellulose." (Italics ours.) It is urged, in substance, that Ellis does not disclose how the urea-phenol-formaldehyde resin which he mentions may be made, while appellants do present a full disclosure of how to make the resin mentioned by them, that the limitation implies the existence of incompatible resins of the same type, and that, in the absence of disclosure by Ellis of a method of producing the resin, this limitation is not supported by the Ellis specification.

We find nothing in the record to indicate that the word "compatible" is used in the counts in any technical sense which requires that it be given any other than its common meaning, which meaning, according to Webster's New International Dictionary, is: "Capable of coexisting in harmony; congruous; accordant; consistent; not repugnant;—usually followed by *with.*"

When such meaning is given the term, we see no reason for disagreeing with the view concurred in by both tribunals of the Patent Office, to the effect that, as expressed by the Board, "the resins disclosed by Ellis are compatible with the cellulose derivative as called for in these counts."

Since, in our opinion, the disclosures of Ellis support the counts, which is the sole question at issue, and since this is purely a question of fact, the decided cases cited on behalf of appellants require neither review nor comment.

The decision of the Board of Appeals is affirmed.

Affirmed.